UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIA SIEMIONKO,

              Plaintiff,

    - against -

BUILDING SERVICE 32B-J BENEFIT FUNDS,

              Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
07-CV-1548 (RRM) (ALC)

**MAUSKOPF, United States District Judge.**

After being denied long-term disability benefits by the Building Service 32BJ Benefit Funds ("the Funds" or "Defendant"), *pro se* Plaintiff Maria Siemionko brings suit under the Employee Retirement Income Security Act ("ERISA") "to recover benefits due to [her] under the terms of [her] plan . . . ." 29 U.S.C. § 1132(a)(1)(B). The Funds move for summary judgment dismissing Plaintiff's Complaint on the grounds that Plaintiff failed to exhaust her administrative appeals, and also that they acted neither arbitrarily nor capriciously in denying Plaintiff disability benefits. The Funds also argue that Plaintiff's state law claims are preempted by ERISA. This Court finds that the Funds are entitled to judgment as a matter of law, the motion for summary judgment is therefore GRANTED, and Plaintiff's Complaint is DISMISSED.

## BACKGROUND[1]

The Funds are comprised of the Building Service 32BJ Pension Fund (the "Pension Fund") and the Building Service 32BJ Health Fund (the "Health Fund"). The Funds are jointly administered benefit funds established pursuant to the Taft-Hartley Act, 29 U.S.C. § 186. They

---

[1] The facts set forth herein are undisputed, and are taken from Defendant's Statement of Material Undisputed Facts Pursuant to Local Rule 56.1 (Doc. No. 24) ("Def.'s L.R. 56.1 Statement"). Plaintiff did not submit a statement pursuant to Local Rule 56.1, as required, and her affidavit in opposition to summary judgment fails to establish any genuine disputes of material fact. The disputes in this case turn on the proper interpretation and application of the plans' terms to Plaintiff's medical condition, not on the facts of that condition.

are administered by an equal number of management and union trustees and governed by Trust Agreements. Plaintiff, a matron for a cleaning company and a member of Building Service Local 32BJ, was covered under the Plans of each Fund. On July 26, 2005, Plaintiff filed an application for a total and permanent disability pension from the Pension Fund and for a total disability benefit from the Health Fund.[2]

In support of her application she submitted a statement, dated July 19, 2005, from her psychiatrist, Dr. Tatyana Tsipursky, who opined that Plaintiff suffered from schizoaffective disorder and bipolar disorder. Dr. Tsipursky further opined that Plaintiff's conditions were chronic, and that Plaintiff was unable to work in any occupation. Plaintiff also submitted a letter, dated February 6, 2003 from Dr. Deepika Bajaj, a neurologist, who diagnosed Plaintiff with lumbosacral radiculopathy, right and left knee derangement, and sprain and strain of the pelvis, all resulting from an accident suffered by Plaintiff at work on December 5, 2002. Dr. Bajaj also submitted an Attending Physicians Report, dated July 22, 2005, in which she opined that Plaintiff was totally and permanently disabled. Plaintiff reported on her application that her last date of covered employment was December 30, 2002.

Following Plaintiff's application for benefits, the Funds arranged for Plaintiff to be examined by two independent physicians retained by the Funds, Dr. Ira Rashbaum, a specialist in physical medicine and rehabilitation, and Dr. David S. Ludwig, a psychiatrist. Drs. Rashbaum and Ludwig were to examine Plaintiff and the medical records submitted by her in support of her application and opine as to whether she was entitled to disability benefits; *i.e.*, whether she was "unable to perform any work." Following his examination of Plaintiff, Dr. Rashbaum concluded that, "[f]rom a physical medicine and rehabilitation standpoint, she is not totally disabled and can

---

[2] Under the rules of the respective Funds, if qualified for disability benefits from both, Plaintiff would only receive the higher of the two benefits. (*See* Health SPD (Doc. 25, Ex. D) at 11–12; Pension Plan (Doc. 25, Ex. F) at 13.)

2

return to work in a sedentary capacity." (Rashbaum Report, Sept. 7, 2005 (Doc. 25, Ex. N) at 2.) He deferred any psychiatric disability determination to the appropriate specialist (here, Dr. Ludwig). Following an examination, Dr. Ludwig, in a separate letter dated November 4, 2005, concluded that, from a psychiatric standpoint, "Maria Siemionko did not have the onset of total or even partial disability during her period of employment." (Ludwig Report (Doc. 25, Ex. O) at 3.)

Following the independent evaluations and related reports of Drs. Rashbaum and Ludwig concluding that Plaintiff was "not unemployable in any capacity," the Funds determined to deny Plaintiff's application for disability benefits, and so informed her by letter dated November 28, 2005. (Nov. 28, 2005 Letter (Doc. 25, Ex. Q) at 1.) The Funds went on to state that, "In order to qualify as totally disabled, you must be unfit for any work." (*Id.*) The Funds reminded Plaintiff that any appeal had to be filed within 180 days, and that she must exhaust the Plans' appeal procedure prior to filing a lawsuit in court. (*Id.* at 2.) The letter also specified that the Appeals Committee would give no deference to the initial decision to deny Plaintiff's claim, and would be made up of individuals who were not involved in the original decision of denial. (*Id.*)

It is undisputed that Plaintiff did not timely appeal the 2005 denial of disability benefits; however, on December 21, 2006, Plaintiff submitted another application for benefits that merely supplemented her original claim with additional medical reports from Dr. Robert Ludwig, a radiologist (no relation to Dr. David S. Ludwig, the independent psychiatrist), and Dr. Janusz Gorzynsjki, a psychiatrist, as well as updated reports from Drs. Tsipursky and Bajaj, and a statement from the Social Security Administration indicating that Plaintiff had been approved for Social Security Disability Insurance payments beginning in June 2004 and that she had been found disabled since December 30, 2002. (*See* Dec. 21, 2006 Application (Doc. 25, Ex. R).)

3

The Funds refused to accept Plaintiff's second application on the grounds that they had denied her first application and she had failed to timely appeal. Moreover, it is the Funds' position that, even if the second application were considered an appeal of the initial denial of benefits, it would still be untimely, a fact not in dispute here.

Plaintiff commenced the instant action on March 6, 2007 in the Supreme Court of the State of New York, Kings County, and it was removed by the Funds to this Court on April 16, 2007. In the interim between the denial of Plaintiff's application and her institution of this lawsuit, however, the Second Circuit decided the case of *Demirovic v. Building Service 32B-J Pension Fund*, 467 F.3d 208 (2d Cir. 2006), in which these same Defendants were instructed that a proper determination of disability under the Plans at issue here required them to perform "a non-medical assessment as to whether [the applicant] has the vocational capacity to perform any type of work—of a type that actually exists in the national economy—that permits [the applicant] to earn a reasonably substantial income from her employment, rising to the dignity of an income or livelihood." 467 F.3d at 215. Accordingly, the Funds instituted a vocational review procedure, which they determined to apply to Plaintiff (despite the fact that her application for disability benefits had already been denied).

Pursuant to the new procedure, the Funds requested that Plaintiff complete a vocational assessment form, which was then referred to Apex Rehab Management ("Apex"), an independent company retained by the Funds to perform vocational assessment analyses of applicants found medically capable of performing sedentary work (as was Plaintiff). Plaintiff's responses on the vocational assessment form indicated that she had been a matron for a cleaning company for approximately nineteen years, that she had a high school education, and that her spoken English was fair and her written English was poor. Apex reviewed the assessment form and Plaintiff's

4

medical records,[3] and concluded that Plaintiff was qualified for at least three occupations that existed in the regional labor market: order clerk, food checker, and assembler, buttons and notions. (Employability Report (Doc. 25, Ex. U) at 1–2.) Two of these occupations were listed as unskilled in the Dictionary of Occupational Titles published by the U.S. Department of Labor, and one (food checker) as semiskilled. In connection with the Funds' reopening of her claim, Plaintiff also submitted additional reports from Drs. Tsipursky and Bajaj, each of whom continued to opine that Plaintiff was completely disabled. (Doc. 25, Ex. V.)

The Appeals Committee for the Funds held a hearing on September 26, 2007 to consider Plaintiff's application, and issued a letter dated October 1, 2007 advising Plaintiff that her application for disability benefits was denied. The letter noted initially that her appeal was untimely, but also stated that "the Fund Trustees agreed to hear your appeal as a courtesy, without waiving the 180-day time limit."[4] (Oct. 1, 2007 Letter (Doc. 25, Ex. X).) The letter went on to state that the Appeals Committee had determined Plaintiff not to be totally and permanently disabled because, after a review of the materials submitted by Plaintiff, the report by Apex, and the remainder of her file, it found that she possessed "transferable skills and residual functional capabilities necessary to perform several occupations." (*Id.* at 2.)

Plaintiff thereafter continued this litigation.[5]

---

[3] It is unclear whether Apex was provided with the materials submitted by Plaintiff from Drs. Tsipursky, Bajaj, Ludwig, and Gorzynsjki, as only the reports of Drs. Rashbaum and David Ludwig are specifically mentioned in the Apex report. (Employability Report (Doc. 25, Ex. U) at 1.)

[4] The Court notes that the Funds' preservation of the waiver defense was also stated at the initial conference held before Magistrate Judge Lois Bloom on June 26, 2007, where defense counsel acknowledged the reopening of Plaintiff's claim to perform the vocational assessment, but stated that the Funds were not waiving their right to argue that Plaintiff's claims were barred by her failure to exhaust the appeals process by timely filing an appeal of the initial denial of benefits. (*See* Tr., June 26, 2007 (Doc. No. 4) at 6–8.)

[5] During a pre-motion conference held before this Court on July 21, 2008, Plaintiff produced to Defendants her own vocational assessment by Unlimited Potential Resources, but that document is not part of the administrative record on which her claim was decided, and is not considered in this Memorandum & Order. *See supra* at 15 & n.8.

## THE PLANS

The Trust Agreements for the Funds grant the Trustees the power:

> To decide, in the Trustees' sole discretion, all questions (both factual and legal) relating to the eligibility or rights of Participants or Beneficiaries for Benefits under the Plan, and the amount and kind of all Benefits to be paid under the Plan; [and] [t]o interpret, in the Trustee's sole discretion, all terms in this Trust Agreement or in the Plan, including the resolution or clarification of any ambiguities, omissions, or inconsistencies.

(Health Fund Trust Agreement (Doc. 25, Ex. C) at 12; Pension Fund Trust Agreement (Doc. 25, Ex. E) at 12.)

The benefits provided by the Health Fund are set forth in a Summary Plan Description (the "Health SPD"), as are the benefits provided by the Pension Fund (the "Pension SPD"). The Health SPD defines "total disability" to mean that "a Member is unable to perform work in any capacity." (Health SPD (Doc. 25, Ex. D) at 11.) The Health SPD requires that:

> To be considered as an applicant for Total and Permanent Disability Benefits, the applicant must provide the Plan with medical proof of disability certified by a qualified physician. The Fund may require that you submit to a medical examination by a qualified medical doctor selected by the Fund for determination of disability or continued disability. . . .
>
> All determinations as to an applicant's disability are made in the sole and absolute discretion of The Board of Trustees or their designees.

(*Id.* at 12.) The Health SPD also provides that the Trustees "have discretionary authority to interpret the terms of the Plan, to determine eligibility and entitlement to benefits in accordance with the terms of the Plan, and to decide any fact related to eligibility for any entitlement to benefits." (*Id.* at iv; *see also id.* at 79.)

Similarly the Pension SPD provides that:

> You are eligible for a Disability Pension if you have at least 120 months of Service Credit and you become totally and permanently disabled after January 1, 1981, while working in Covered Employment.

6

(Pension SPD (Doc. 25, Ex. G) at 6.) The Pension SPD also gives the Trustees the sole and absolute discretion to administer, apply, and interpret the Plan, including the Pension SPD. (*Id.* at 17–18.)

## DISCUSSION

Plaintiff alleges that the denial by the Funds of her claim for long-term disability benefits was arbitrary and capricious because she meets the definition of disabled under the terms of the plan governing each fund ("the Plans"). In support of summary judgment, the Funds argue that the Plaintiff has failed to show that the decision to deny her application was arbitrary and capricious, and that her ERISA claims must therefore be dismissed. They also argue that Plaintiff's ERISA claims should be dismissed because she failed to exhaust the Funds' appeals process. Finally, the Funds argue that Plaintiff's state law claims are preempted by ERISA, and must also be dismissed.

### I. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Once a moving party meets its initial burden of demonstrating that no genuine issue of material fact exists, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in their favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact. *See*

7

*Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Nonetheless, the district court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Giano v. Senkowski*, 54 F.3d 1050, 1052 (2d Cir. 1995). Where no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). This Court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. *See Kerzer*, 156 F.3d at 400.

## II.     *Pro Se* Plaintiff's Submissions Are Liberally Construed

Construing *pro se* Plaintiff's submissions liberally, as required, see *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999), this Court interprets them to raise the strongest arguments that they suggest. *See Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993). A court must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights due to her lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983). However, the right of self-representation cannot exempt a party from compliance with relevant rules of procedural and substantive law. *Id.* at 95.

## III.    Plaintiff's Failure To Exhaust Her Administrative Remedies Requires Dismissal of Her Complaint

As an initial matter, the Funds argue that Plaintiff's complaint should be dismissed for failure to exhaust the administrative process. Federal courts, including the Second Circuit, "have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)). "More

specifically, claimants must pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are denied." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002). "In the ERISA context, the Second Circuit has recognized that the primary purposes of the exhaustion requirements are to: '(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.'" *Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, 517 F. Supp. 2d 646, 650 (W.D.N.Y. 2007) (quoting *Kennedy*, 989 F.2d at 592). The claims of a plaintiff who fails to exhaust her administrative remedies must be dismissed. *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 134 (2d Cir. 2001). Failure to exhaust administrative remedies must be asserted and proved as an affirmative defense.[6] *Paese*, 449 F.3d at 446.

Here, Plaintiff admits that she failed to appeal the initial denial of her claim, and that her second claim cannot properly be considered an appeal (and, that if it were, it would be untimely). Instead, citing *Bernikow*, Plaintiff contends that her failure to appeal should be excused on the grounds of futility. Plaintiff properly states that "failure to exhaust . . . may be excused on the grounds of futility and only where claimants make a clear and positive showing that pursuing available administrative remedies would be futile." (Pl.'s Aff. Opp'n Summ. J. (Doc. No. 28) ¶ 9 (citing *Bernikow*, 517 F. Supp. 2d 646).) *See also Kennedy*, 989 F.2d at 594; *Davenport*, 349 F.3d at 133.

---

[6] The Funds asserted "failure to exhaust" as an affirmative defense in their Answer. (*See* Answer (Doc. 25, Ex. B) at 2.)

Plaintiff's argument that pursuing an appeal would have been futile, however, must fail. Plaintiff's futility argument simply reiterates her belief that the denial of benefits was incorrect, and relies on the determination of her treating physicians that she was disabled. She states that "[t]here was no evidence that an appeal could have changed their decision." (Pl.'s Aff. ¶ 10.) Plaintiff essentially asserts that the absence of evidence is equivalent to the "clear and positive showing" of futility that the case law holds she must make. This is incorrect. In fact, Plaintiff's arguments here are the same as those rejected in the case she relies on, *Bernikow*. *See* 517 F. Supp. 2d at 651–53; *id.* at 652 ("[T]he mere fact that an administrator denied a claim cannot be sufficient to prove that an appeal would have been futile."). It is not for this Court to speculate as to what the Funds might ultimately have decided had Plaintiff timely appealed the denial of her original application for disability benefits. As noted earlier, the purposes of the exhaustion requirement include "uphold[ing] Congress' desire that ERISA trustees be responsible for their own actions, not the federal courts," and allowing for the creation of a clear administrative record. *See Kennedy*, 989 F.2d at 594. Plaintiff's failure to exhaust the administrative appeals process is fatal to her claims.

Nor does the Funds' decision to reopen Plaintiff's claim in light of the *Demirovic* opinion operate to waive the affirmative defense of exhaustion. In *Chapman*, the Second Circuit held that the decision of a plan administrator to rule on the merits of a claimant's untimely appeal did not waive the plan's defense. 288 F.3d at 510–11; *see also id.* at 510 (defining "waiver as an intentional relinquishment and abandonment of a known right or privilege"). As set forth above, the Funds consistently warned Plaintiff in their denial letters of the deadline for appeal, and that a failure to exhaust the appeals procedure would bar any subsequent court action. The Funds also cautioned Plaintiff that, in offering to reconsider their initial decision in light of *Demirovic*, they

were not waiving their exhaustion defense. In these circumstances, this Court holds that the Funds did not evince an intention to relinquish or abandon the exhaustion defense previously asserted.[7]

## IV. Plaintiff's Claim Fails on the Merits

### A. The Plans Give the Trustees Discretionary Authority To Determine Eligibility for Benefits and To Construe the Terms of the Plans

The Supreme Court has held that where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's decision is to be reviewed under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2006). In determining whether the Funds acted in an arbitrary and capricious manner in denying Plaintiff's application, this Court's review is limited to the administrative record before the Trustees. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).

Under an arbitrary and capricious standard of review, "the scope of judicial review is narrow." *Celardo v. Gny Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (citing *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 117 (2d Cir. 2002); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). A court may overturn a plan administrator's decision to deny benefits only if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442 (internal quotations omitted); *see also*

---

[7] Moreover, a finding of waiver in these circumstances would discourage plan administrators from undertaking similar review efforts in the future, a development to be avoided. *See also Patterson-Priori v. Unum Life Insurance Co. of Am.*, 846 F. Supp. 1102, 1106–09 (E.D.N.Y. 1994) (holding that, for statute of limitations purposes, the moment of accrual occurs when there has been a clear denial of the application of benefits, and that subsequent offers by a plan administrator to review additional materials and reconsider its decision do not operate to toll or restart the limitations period, and noting that the opposite result would lead plan administrators to simply refuse reconsideration of denial decisions).

*Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) ("The Court may not upset a reasonable interpretation by the administrator."). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." *Miller*, 72 F.3d at 1072 (internal quotations omitted).

The Second Circuit has held that, "[i]n a situation 'where both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.'" *Celardo*, 318 F.3d at 146 (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir. 1983)). The Circuit also instructs that courts "are not free to substitute [their] own judgment for that of the [plan administrator] as if [they] were considering the issue of eligibility anew." *Pagan*, 52 F.3d at 442.

Here, the both the Health Plan and the Pension Plan rest discretionary authority to determine eligibility and to construe the terms of the Plans exclusively with the Funds. *See Demirovic*, 467 F.3d at 211 (holding, in a case with the same defendant and identical language to the Pension Plan, that the plan conferred discretionary authority on the Funds). (*See also* Health SPD at 12, 79; Pension SPD at 6, 17–18.) Accordingly, the only determination for this Court is whether the Funds acted in an arbitrary and capricious manner in denying Plaintiff's claim.

### B. The Trustees' Conflict of Interest Is Not an Important Factor in Determining Whether Their Actions Were Arbitrary and Capricious

The Supreme Court has recently instructed that a conflict of interest on the part of an ERISA plan administrator is a factor that must be weighted by a court determining whether the denial of benefits was arbitrary and capricious. *See Metro. Life Ins. Co. v. Glenn*, __ U.S. __, 128 S. Ct. 2343, 2348 (2008). Such a conflict can be created by "the fact that a plan

12

administrator both evaluates claims for benefits and pays benefits claims . . . ." *Id.* Following *Glenn*, the Second Circuit has held that "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate;" instead, the arbitrary and capricious standard still applies. *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008). Here, the Funds both evaluate participants' claims for benefits and pay those benefits, creating a conflict of interest.

The *Glenn* Court explained how the "conflict" factor is to be assessed in determining whether an administrator's decision was arbitrary and capricious:

> [A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

128 S. Ct. at 2351 (citations omitted).

Plaintiff has adduced no evidence that the existing conflict affected the decision in her case. Furthermore, as found by another court in this District, "the conflict here is of relatively little importance. There is no evidence that the Funds have a history of biased plan administration . . . ." *Durakovic v. Bldg Serv. 32 B-J Pension Fund*, Case No. 05-CV-2328 (FB) (JO), 2009 U.S. Dist. LEXIS 66523, at *14 (E.D.N.Y. July 31, 2009); *see also id.* at *15 (noting that the Court had conducted a survey of cases involving the Funds to determine that there were no decisions in which they were found to be biased). The Funds' procedures provide multiple

13

safeguards against bias: the Funds hire independent medical and vocational examiners, the Appeals Committee is composed of different individuals than those who decided the initial denial, and the Appeals Committee is composed of equal numbers of representative of the union and employers, none of whom are paid by the Funds. *See id.* (reaching a similar conclusion). Accordingly, while the Funds' conflict of interest is a factor to be considered, it is not an important factor, and could only tip the balance in favor of Plaintiff if the remaining factors are closely balanced—as discussed below, however, they are not.

### C. The Funds' Denial of Plaintiff's Claim Was Neither Arbitrary Nor Capricious

Plaintiff's argument that the Funds' denial of disability benefits should be reversed also fails on the merits. Plaintiff argues that the Funds' denial of benefits was arbitrary and capricious because (1) she is "truly disabled," and (2), even if she is medically capable of working, she does not have the ability, experience, or vocational skills to obtain any of the employment possible. As Plaintiff succinctly puts it, "[She] is a cleaning woman and nothing more." (Pl.'s Aff. ¶ 3.) The Funds, however, argue that they were entitled to rely on the evaluations of the two independent physicians they retained to evaluate Plaintiff, who concluded that she was not totally disabled, and on the vocational assessment by Apex, who concluded that she had transferable skills and functional capabilities to perform several occupations, to deny Plaintiff's claim for disability benefits. Furthermore, the Funds argue that Plaintiff has not advanced any argument to show that their decision lacked support by substantial evidence, was irrational, or otherwise arbitrary and capricious.

Although sympathetic to Plaintiff's situation, this Court agrees that the Funds' decision to deny Plaintiff's claim for disability benefits was not arbitrary and capricious. The Court finds that the Funds considered all of the evidence submitted by Plaintiff as well as the reports of the

highly credentialed independent physicians and vocational consultant retained by the Funds, and found that Plaintiff had not met the requirement of total disability set forth in the Health SPD and the Pension SPD because she was still capable of certain sedentary work. ERISA does not require benefits plans to defer to the opinions of Plaintiff's treating opinions, and the Funds' decision has support from reliable evidence in the administrative record. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

Nor was the Funds' second determination, that Plaintiff was qualified for certain sedentary jobs, arbitrary and capricious. In performing its vocational assessment, Apex reviewed the questionnaire filled out by Plaintiff and the medical evaluations of Drs. Rashbaum and Ludwig. Moreover, Plaintiff failed to offer any vocational assessment of her own to contradict the findings of Apex until July 21, 2008, more than a year after the Apex report had been issued and almost ten months after the Funds informed her that they would not reconsider the decision to deny her disability benefits.[8] In reviewing an ERISA plan administrator's decision under the arbitrary and capricious standard, the Court's review is limited to the administrative record. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). Accordingly, this Court does not consider the vocational assessment submitted by Plaintiff in determining whether the Funds' decision was arbitrary and capricious.

---

[8] The report itself was not even prepared until February 2008, more than four months after the Funds had denied Plaintiff reconsideration of its original decision to deny her application for benefits. (*See* Unlimited Potential Resources Report (Doc. No. 25, Ex. Y).)

Furthermore, the Second Circuit in *Demirovic* made clear that it was "not undermining the broad discretion that still reposed with ERISA plan administrators, explaining that where, as in the present case, 'the plan is silent on the issue of non-medical vocational characteristics, the nature of this consideration will be within the plan administrators' broad discretion.'" *Durakovic*, 2009 U.S. Dist. LEXIS 66253, at *20 (quoting *Demirovic*, 467 F.3d at 215). This Court echoes the concerns of Judge Block in *Durakovic* that the Funds could have authorized a more detailed and careful assessment of Plaintiff's vocational skills, but concludes as in that case that the assessment by Apex passes legal muster. *See id.* at *21–22 ("Therefore, although the reliability of the Apex's vocational assessment might have benefitted if Apex had considered all of the medical records, rather than apparently being limited to the Funds' medical examiners' reports, had considered the plaintiff's vocational expert's report, and had included a more detailed analysis of the jobs that plaintiff's vocational capacities would enable her to perform, the court cannot say that it was legally inadequate.").

## V. Plaintiff's Second and Third Causes of Action for Breach of Contract and Emotional Distress Are Preempted

In her second cause of action, Plaintiff alleges that she has "vested rights under the Building Service 32BJ Health Fund disability plan," that she contracted for those rights for valuable consideration, and that the Funds' denial of long term disability benefits represents a breach of contract. (Compl. (Doc. No. 1) ¶¶ 15–20.) As a third cause of action, Plaintiff alleges that the contract alleged in her second cause of action required the Funds "to deal fairly and in good faith," and that the Funds' failure to do so caused her substantial emotional distress and economic and noneconomic damages. (*Id.* ¶¶ 21–23.) Plaintiff concedes that the Funds are employee pension or welfare benefit plans governed by ERISA, and this case was removed from

state court on those grounds. *(See, e.g., id.* ¶¶ 1, 13; Notice of Removal (Doc. No. 1) ¶ 4.) *See also* 29 U.S.C. § 1002(1)(A).

When Congress created ERISA, it expressly created a broadly worded preemption provision to "establish pension plan regulation as exclusively a federal concern." *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 137–38 (1990). The statute provides that, "except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144 (emphasis added). A law "relates to" an employee benefit plan when the plan has a connection with or reference to such a plan. *Shaw v. Delta Airline*, 463 U.S. 85, 97 (1983). ERISA preempts state common law claims that seek "to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004); *see also Ingersoll-Rand Co.*, 498 U.S. at 145 (ERISA preempts claims that "purport[] to provide a remedy for the violation of a right expressly granted by [ERISA]").

The Second Circuit has held that claims for breach of contract and breach of the covenant of good faith and fair dealing resulting from the denial of benefits under an ERISA benefit plan are preempted. *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63 (finding, *inter alia*, that claim for emotional distress arising out of breach of plan agreement was preempted); *Devlin v. Trans. Commc'ns Int'l Union*, 173 F.3d 94, 101 (2d Cir. 1999) (affirming dismissal on preemption grounds of breach of contract claim relating to ERISA plan). Accordingly, Plaintiff's second and third causes of action are preempted by ERISA, and must be dismissed.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's motion for summary judgment is GRANTED, and the Complaint is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2009

ROSLYNN R. MAUSKOPF
United States District Judge